UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sean Coffey,

        Plaintiff,

v.

City of Oakdale and William Sullivan
in his individual and official capacity,

        Defendants.

Civil No. 10-4060 (JNE/TNL)
ORDER

Matthew H. Morgan, Esq., and Katherine M. Vander Pol, Esq., Nichols Kaster, PLLP, appeared for Plaintiff.

John M. LeFevre, Jr., Esq., and Mary D. Tietjen, Esq., Kennedy & Graven, Chartered, appeared for Defendants.

      Plaintiff Sean Coffey, a police officer employed by the City of Oakdale, was terminated from his job following an internal affairs investigation. Coffey alleges that the termination was wrongful in that it was due to his involvement in organizing a vote of no confidence against Chief of Police William Sullivan and his report of sexual harassment by an Oakdale police captain. Coffey claims that Defendants committed constitutional violations under 42 U.S.C. § 1983, violated the Minnesota Whistleblower Statute § 181.932, subd. 1(1), and tortiously interfered with his prospective economic relations. Defendants move for summary judgment. Because it finds genuine issues of fact as to Coffey's 42 U.S.C. § 1983 claim that his speech involving the vote of no confidence is a protected activity, the Court denies Defendant William Sullivan's motion as to that claim. Defendants' motions on all other claims are granted.

1

## I. BACKGROUND[1]

In 1999 Coffey joined the City of Oakdale, Minnesota Police Department as an officer in the patrol division where he continues to work.[2] Chief William Sullivan has been the Oakdale Chief of Police for the entirety of Coffey's employment with the Department. Three incidents of alleged protected speech form the basis of Coffey's claim: first, Coffey's report of sexually inappropriate comments by one of the Department's captains; second, statements made by Coffey during union meetings in support of a vote of no confidence in Sullivan; third, Coffey's negative comments about the Department and Sullivan at a city council meeting. Defendants counter that Coffey was terminated based on a history of poor performance and false statements he made in connection with an internal affairs investigation (IA).

Over the course of his employment, Coffey has been the subject of several disciplinary actions. Between 2002 and 2010, Coffey was the subject of eight IAs. Seven of the IAs resulted in discipline, including four suspensions. Coffey was disciplined for inappropriate statements, improper vehicle tow, paperwork and investigation errors, and twice for insubordination and conduct unbecoming a police officer.

On May 15, 2008, Coffey responded to a 911 call regarding a stolen license plate. Coffey entered the wrong license plate number on the initial complaint report. As a result of that error, on August 22, 2008, the police towed and impounded an innocent person's vehicle. Coffey's supervisors initiated an IA on September 2, 2008. Coffey gave two formal statements in which he admitted his mistake. Aspects of Coffey's formal statements were inconsistent with the

---

[1] Unless otherwise stated, the facts described below are undisputed or are those that a reasonable fact-finder could find when viewing the record in the light most favorable to Plaintiff. *See Gosney v. Reliable Life Ins. Co.*, 293 F.3d 1052, 1053 (8th Cir. 2002).

[2] After arbitration, Coffey was reinstated with back pay and a week-long suspension. Coffey does not contest the arbitration. But he argues that termination was too harsh a punishment for his patrol errors, and he was instead punished for exercising his First Amendment right to free speech.

statements of his supervising sergeants. After the investigation ended in November 2008, Sullivan sent a letter to counsel for the City requesting "the maximum possible sustainable discipline" for Coffey.[3]

Coffey's first alleged incident of protected speech occurred after his initial work on the stolen license plate case, but before his mistake came to light. It was Sullivan's practice to hold meetings twice a year during which the officers could address Department issues directly with him in the absence of other supervisors. On June 11, 2008, Coffey and several other officers attended one of those meetings. Coffey initiated a discussion about Captain Jack Kettler and was one of three officers who told Sullivan that Kettler had made some inappropriate sexual comments in the workplace.[4] Coffey overheard Kettler make one of the comments, but he himself was not the subject of any inappropriate comments. Sullivan did not take any action following the meeting and stated that no officer had filed a formal complaint in accordance with the Department's procedure.[5] Coffey alleges that the initiation of the IA in the stolen license plate case was in retaliation for his comments about Kettler at Sullivan's meeting.

Coffey's second allegation of protected speech concerns his involvement in a vote of no confidence against Sullivan. In November or December 2008, the Oakdale police officers began discussing a vote of no confidence in Sullivan at their closed union meetings. Coffey claims a

---

[3] The actual letter Sullivan sent was not included in the record. Sullivan discussed the letter and its contents in his deposition. (Morgan Decl. Ex. 45, at 37-38). Plaintiff does not dispute the existence or contents of this letter.

[4] It is disputed whether Plaintiff actually initiated this discussion or merely added to the complaints of other officers. For the purposes of this motion, the Court assumes Plaintiff initiated the discussion.

[5] The Oakdale Police Department Standard Operating Procedure on Harassment and Offensive Behavior states in relevant part that "[a]ny knowledge about or claims of a violation of this policy must be reported to the employee's department head. If for any reason an employee is not comfortable making a report to the employee's department head, the employee may make the report directly to the City Administrator. . . . Department heads shall promptly report any allegations of violation of this policy to the City Administrator." (Morgan Decl. Ex. 5, at 4.1, 4.5).

3

leadership role in organizing the vote of no confidence, but Sullivan—who was not present at the meetings—contends that he had no contemporaneous indication that Coffey was other than a member of the group at large. On that point, Coffey offers no evidence to the contrary. Nor does Coffey claim that he held any formal leadership position in the union. At their January 28, 2009 union meeting, the officers took a preliminary vote to determine whether they would proceed with a formal vote of no confidence against Sullivan. A day or two after the preliminary vote, one of the officers (not Coffey) told Sullivan that the group had discussed a vote of no confidence and provided him with a copy of the list of complaints to be included in a letter to the City Administrator.[6] A formal vote of no confidence was taken at a union meeting on the afternoon of February 11, 2009, but Coffey did not participate in that meeting. Sullivan had placed Coffey on paid administrative leave pending termination at 5:30 a.m. that morning. The union voted no confidence in Sullivan. The vote of no confidence letter was mailed to Administrator Waldron and the Oakdale City Council on or about February 12, 2009. Waldron provided a copy to Sullivan on February 17, 2009. On February 25, 2009, Sullivan completed his Findings of Fact on the stolen license plate IA, which he attached to a letter to Coffey that stated: "I am considering recommending that your employment with the city be terminated." (Morgan Decl. Ex. 24).

Coffey's final assertion of protected speech occurred at the March 24, 2009 public meeting of the Oakdale City Council when the council considered Coffey's termination. Coffey spoke in his own defense and articulated failings in the Department and by Sullivan. The city council, following the recommendations of Sullivan and Administrator Waldron, voted to terminate Coffey. On March 25, 2009, Coffey was notified in writing of his termination.

---

[6]  The list of complaints did not contain Coffey's name, or the names of any other officers.

Pursuant to the collective bargaining agreement, Coffey grieved the termination decision and submitted the matter to arbitration. Arbitration took place on August 10-13, 2009 and resulted in Coffey being reinstated with full back pay and overtime. The arbitrator imposed a forty-hour unpaid suspension and a letter of reprimand for insubordination and paperwork infraction. Coffey returned to work on October 19, 2009.

## II.     DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact either is or cannot be genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Coffey "must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *FDIC v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997) (citations and quotations omitted).

### A.     42 U.S.C. § 1983 claim against Sullivan

Coffey asserts § 1983 claims against Sullivan in his individual and official capacities.[7] 42 U.S.C. § 1983 provides in relevant part:

---

[7] "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir.1999) (citation omitted). The City's potential liability under 42 U.S.C. § 1983 is discussed *infra*.

5

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983 (2006). Because § 1983 is "not itself a source of substantive rights," a court addressing a claim pursuant to § 1983 must "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Coffey alleges retaliation by his government employer in response to the exercise of his First Amendment right to free speech. *See Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002) (stating that violations of the First Amendment can form a basis for liability under § 1983).

To establish a prima facie case of retaliation for exercise of his First Amendment rights, Coffey must prove "(1) [he] engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against [him]; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action." *Davison v. City of Minneapolis*, 490 F.3d 648, 655 (8th Cir. 2007) (citing *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "If the plaintiff meets this burden, the burden shifts to the defendant to demonstrate that the same employment action would have been taken in the absence of the protected activity." *Id.* The second element is undisputed as the parties agree that the IA, administrative leave pending termination, and termination constitute adverse employment actions. *See Altonen v. City of Minneapolis*, 487 F.3d 554, 560 (8th Cir. 2007) (implying that an investigation that results in discipline can be an adverse employment action). The parties do not agree on the first and third elements.

When a public employee speaks pursuant to his or her official duty, the employer is entitled to exercise control over that speech. "[W]hen public employees make statements pursuant to their official duties, [they] are not speaking as citizens for First Amendment

6

purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Public employees retain their First Amendment right to speak as citizens on matters of public concern. The line between speaking as a citizen on a matter of public concern versus as a police officer complaining about internal matters is not black and white. "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id.* at 420 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)). Only speech made as a concerned citizen receives First Amendment protection. *See Bailey v. Dep't of Elem. & Secondary Educ.*, 451 F.3d 514, 518 (8th Cir. 2006); *Belk v. City of Eldon*, 228 F.3d 872, 880 (8th Cir. 2000) ("Nor does the presence of unsavory personal motives eviscerate [First Amendment] protection, so long as the speech itself addresses matters of public concern"); *Cox v. Dardanelle Pub. Sch. Dist.*, 790 F.2d 668, 672 (8th Cir. 1986) (finding no protected speech where the employee spoke on "internal policies or practices which are of relevance only to the employees of that institution"). Where public concerns and internal matters are both present, the content, form, and context of the allegedly protected statement determine if the speaker was acting as a concerned citizen or as an employee. *Connick*, 461 U.S. at 147-48. This inquiry is a question of law, not fact. *Id.* at 148 n.7.

If Coffey spoke as a citizen on a matter of public concern, then the Court must balance the "interests of the [plaintiff], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). "While the *Connick-Pickering* balancing test presents a question of law for the courts to decide, any underlying facts that are material and in genuine dispute must be submitted to a fact finder." *Gordon v. City of Kansas*

*City*, 241 F.3d 997, 1003 (8th Cir. 2001). The following factors bear on a *Pickering* balancing analysis: "(1) the need for harmony in the office or work place; (2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question has caused or could cause the relationship to deteriorate; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform his or her duties." *Bailey*, 451 F.3d at 521-22. A *Pickering* balancing analysis is required if Defendants produce sufficient evidence that the speech had an adverse effect on the Department. *Sexton v. Martin*, 210 F.3d 905, 911-12 (8th Cir. 2000). Defendants here attempt no such showing. (Def.'s Mem. Supp. Mot. Summ. J. 25 n. 5). Further, the parties have not provided factual support or made arguments on how the Court should weigh these factors. Thus, the Court finds it premature to engage in a balancing analysis.

The third element requires Coffey to show causation. "Evidence that gives rise to an 'inference of retaliatory motive' is sufficient to prove a causal link between the speech and the adverse action." *See Altonen*, 487 F.3d at 560-61 (quoting *Kipp v. Mo. Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002)). Causation can form a basis for summary judgment, but it is generally a question for the jury. *Naucke*, 284 F.3d at 928 ("[Causation] can provide the basis for summary judgment when 'the question is so free from doubt as to justify taking it from the jury.'" (quoting *Ricketts v. City of Columbia*, 36 F.3d 775, 779 (8th Cir.1994))).

Defendants argue that Coffey cannot prove the elements of his prima facie case because Coffey's speech bore on internal police department problems, not matters of public concern. Further, Defendants argue that Coffey's prima facie case fails on the third element, because Coffey's speech was not a motivating factor in Defendants' decisions regarding his employment.

Finally, Defendants argue that they "would have reached the same decision as to [Plaintiff's] []employment even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287. The Court considers Coffey's speech regarding the reports of sexual harassment, then the vote of no confidence, and finally, the comments at the city council meeting.

### 1. Reports of sexual harassment

On June 11, 2008, Coffey attended one of Sullivan's twice yearly meetings for officers outside the presence of their supervisors. At that meeting, three officers, including Coffey, reported that they had knowledge that Captain Kettler had made inappropriate sexual comments. Coffey argues that this was protected speech and that Sullivan retaliated against him for making it by initiating the IA in the stolen license plate case. Even assuming that this is a matter of public concern, summary judgment is warranted because Coffey cannot show the requisite causation. No direct evidence connects the stolen license plate IA and Coffey's report of sexual harassment. The circumstantial evidence provided is entirely speculative. Sullivan's meeting occurred on June 11, 2008. The stolen license plate IA was not opened until September 2, 2008—ten days after an innocent person's car was towed due to Coffey's reporting error. Coffey's claim that the IA was initiated in retaliation for his comments at the meeting three months earlier, rather than the towing of the wrong car 10 days earlier, rests purely on speculation. Speculation is insufficient to prevent summary judgment. *See e.g. Norman v. Schuetzle*, 585 F.3d 1097, 1103 (8th Cir. 2009). Coffey does not make out a prima facie case of retaliation for exercise of his First Amendment rights by reporting sexual harassment.

### 2. Vote of no confidence

Coffey claims that he engaged in protected speech at the union meetings involving the vote of no confidence in Sullivan. It is undisputed that Coffey's involvement in the union

meetings was not part of his patrol duties. It is also undisputed that a vote of no confidence in Sullivan was discussed at union meetings, that the vote passed, and that the police officers sent a letter, which became public, to the city council. The letter included Coffey's contributions on "high turnover, continued harassment, concerns regarding Captain Kettler, and also the lack of Chief Sullivan investigating the comments made by Captain Kettler." (Coffey Dep. 101:9-12, 105:16). Because the letter was public and the vote of no confidence was on a key public official, the vote is a matter of public concern and Coffey's statements associated with the vote are similarly of public concern. *See Belk*, 228 F.3d at 878 ("Speech that criticizes a public employer in his capacity as a public official also addresses matters of public concern."). Further, Coffey's specific contributions to the letter—high turnover of police officers, harassment, and leadership failures—would affect the ability of the Department to perform its public safety functions. *See McGee v. Pub. Water Supply*, 471 F.3d 918, 920 (8th Cir. 2006) ("[P]ublic safety issues are obvious examples of matters that are of concern to the general public.").

Defendants' arguments that the form and context of Coffey's speech show that it was not of public concern are not persuasive. Defendants highlight that the vote of no confidence was discussed at nonpublic, confidential union meetings to which the Defendants, the public, and the media were not invited. It is not necessary that the speech reach the media for protection under the First Amendment. *Campbell v. Ark. Dept. of Corr.*, 155 F.3d 950, 959 (8th Cir. 1998) (citing *Connick*, 461 U.S. at 146). Private internal speech can be protected by the First Amendment. *See Connick*, 461 U.S. at 146 ("First Amendment protection applies when a public employee arranges to communicate privately with his employer rather than to express his views publicly."); *see also Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415-16 (1979) (arranging "to communicate privately with his employer rather than to spread his views before the public" did

not cause the plaintiff to lose his free speech rights); *Belk*, 228 F.3d at 879-80 ("Private statements are particularly amenable to First Amendment protection when they are made to a public official in his official capacity."). In this case, it is undisputed that Sullivan was aware of the union discussions about a vote of no confidence even though he did not attend the meetings. He was provided a draft of the letter that resulted from the union discussions, and the final letter was made public.

Defendants also argue that Coffey's involvement in the vote of no confidence was not actually out of public concern, but rather an attempt to distract from his own discipline issues. They point to Sullivan's deposition testimony that there was a rumor around the Department that Coffey thought the IA may result in termination because it was taking a long time to complete. But at his deposition, Coffey testified that the purpose of the vote of no confidence was to "make the police department better as a whole." (Coffey Dep. 89:2-3, Jan. 25, 2011). Taking the facts in the light most favorable to Coffey, the Court is not persuaded that he was advocating in favor of a vote of no confidence to distract from his pending IA. *Compare Gardetto v. Mason*, 100 F.3d 803, 813 (10th Cir. 1996) (finding plaintiff was genuinely concerned with his employer's wrongdoing when he sought to convince the faculty association to proceed with a vote of no confidence), *with Connick*, 461 U.S. at 148 (holding employee's attempts to get her coworkers to support a vote of no confidence in their supervisors were "mere extensions of [her] dispute over her transfer"). Coffey has not been very specific about his statements at the union meetings, but at this stage, the record is sufficient for the Court to find that Coffey spoke as a citizen on a matter of public concern, even though he may have hoped for a private benefit as well.

Defendants next argue that Coffey cannot prove that his speech, even if it is protected, was a substantial or motivating factor in Defendants' decision to take adverse employment

11

action. The causation element overlaps with Defendants' defense that they would have terminated Coffey in the absence of his protected speech. Thus, the Court examines these arguments together.

Sullivan alleges that it was Coffey's deficiencies as a patrol officer that motivated his recommendation, and that much of Coffey's alleged protected conduct was unknown to Sullivan at the time he placed Coffey on administrative leave and recommended his termination. It is undisputed that Sullivan knew that the union was considering a vote of no confidence and that he was aware of the issues forming the basis of such a vote. But the extent of Sullivan's knowledge of Coffey's role in the vote of no confidence is disputed. Coffey testified at his deposition that he "did a lot of the talking and investigation" at the initial planning meetings for the vote of no confidence. (Coffey Dep. 87:2-3, Jan. 25, 2011). Coffey also stated that he took a leadership role, and that he assisted in drafting the vote of no confidence letter. At this stage, the Court must view the facts in the light most favorable to Coffey, and thus will accept as true that Coffey took a leadership role. Sullivan argues that even so, he was not aware of Coffey's contributions to the vote of no confidence. Sullivan testified at his deposition that he assumed Coffey was involved in the union meetings as a part of "the group at large." (Sullivan Dep. 12:10-13, May 11, 2011). Sullivan also testified that he believed the vote of no confidence discussions were a "preemptive strike" and an "effort to cloud the issues and perhaps even in some form or fashion stop a potential termination" of Coffey. (Sullivan Dep. 12:15, 13:5-7, May 11, 2011). This statement indicates that Sullivan linked the vote of no confidence to Coffey's employment in the form of a "preemptive strike." This connection creates more than a "scintilla of evidence" such that a reasonable jury could conclude that Sullivan placed Coffey on administrative leave and

recommended termination in order to deter him and the other officers from pursuing the vote of no confidence. *See Bell*, 106 F.3d at 263.

Additionally, Coffey points to the timing of his termination. "[T]emporal proximity between protected activity and an adverse employment action can contribute to establishing the third element of a prima facie case of retaliation." *Davison*, 490 F.3d at 657; s*ee also Morris v. City of Chillicothe*, 512 F.3d 1013, 1019-20 (8th Cir. 2008). The timing of Sullivan's decision to recommend termination is disputed. Defendants argue that the decision to fire Coffey was made in November 2008 when Sullivan wrote the counsel for the city that he wanted to pursue "the maximum possible sustainable discipline." Sullivan (falsely) told the union steward in December 2008 that he would be "surprised" if Coffey was terminated. Coffey argues that Sullivan's conflicting statements and the temporal proximity of the vote of no confidence to Coffey's termination cast doubt on whether Sullivan arrived at his decision in November 2008. The investigation for the stolen license plate IA was finished by November 18, 2008, but Sullivan did not complete his Findings of Fact until February 9, 2009—less than two weeks after being informed of the vote of no confidence discussions. Sullivan put Coffey on administrative leave pending termination at 5:30 a.m. on February 11, 2009—the same day as the union meeting where the final vote of no confidence occurred.

Sullivan argues that he put Coffey on administrative leave and recommended termination based on Coffey's poor employment record and dishonest statements during the stolen license plate IA, and he points to Coffey's long history of documented performance problems. Coffey does not dispute the Findings of Fact in the stolen license plate IA but asserts that he was targeted for speaking out rather than for his mistakes as a patrol officer. He alleges that Sullivan has a history of targeting officers who speak out until they quit the Department. Coffey

references his own deposition testimony as well as the deposition testimony of three other officers who all state that the Department's supervisors put certain officers in the "hot seat" and scrutinize their behavior more than that of other officers. They assert that Coffey was one of these targeted officers. Coffey's employment record indicates a pattern of performance problems, and Coffey admits he made mistakes in the stolen license plate case. Defendants may have been justified in terminating Coffey. But because Sullivan's motivation in recommending termination is disputed, it cannot be determined that Defendants would have taken the same action in the absence of Coffey's protected conduct.

Coffey has pointed to disputed material facts regarding Sullivan's actions such that the Court cannot rule as a matter of law. The Court must consider the facts in the light most favorable to Coffey. Sullivan's motivation for recommending termination and placing Coffey on administrative leave is a disputed fact that prevents the Court from making a determination as a matter of law. The issue of causation is not so free from doubt as to justify taking the question from the jury. *Naucke*, 284 F.3d at 928.

### 3.     Statements at the city council meeting

Finally, Coffey argues that his statements at the city council meeting were protected speech. Defendants argue Coffey's statements at the city council meeting were primarily motivated by Coffey's desire to keep his job. The content of Coffey's speech included problems within the Department that are matters of public concern, but the context of the speech shows that Coffey was primarily motivated by his own self-interest in protecting his job rather than a desire to address matters of public concern. Public employees have a constitutional right to a name-clearing hearing. *See Rush v. Perryman*, 579 F.3d 908, 913-14 (8th Cir. 2009). Coffey's termination was an agenda item of the city council on March 24, 2009. Coffey's presence at that

council meeting was for the purpose of presenting the reasons he should not be terminated in accordance with the recommendations of Sullivan and Waldron. Thus, Coffey did not speak as a citizen on a matter of public concern, and his speech at the council meeting is not protected under the First Amendment.

**B.      42 U.S.C. § 1983 claim against the City of Oakdale**

Coffey alleges that, in addition to Sullivan, the City is also liable for the violations of his First Amendment rights under 42 U.S.C. § 1983. There is no *respondeat superior* liability for municipal entities, and they are generally only liable for their own unconstitutional acts. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Coffey must prove that a City policy or custom was the "moving force of the constitutional violation." *Id.* at 694. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). A single policy decision can expose the municipality to liability if that decision is made by the official with final policymaking authority. *See Praprotnik*, 485 U.S. at 123 (referring to *Owen v. City of Independence*, 445 U.S. 622 (1980), and *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)).

Coffey claims the City is liable for his termination. The city council, not Sullivan, is the policymaker and final decisionmaker on termination. Sullivan and Waldron could make recommendations to the city council, but the city council retained the authority to terminate employees. Thus, in order for the city council to be liable for Coffey's termination, they would have needed to ratify the illegal basis for it. *Praprotnik*, 485 U.S. at 127. Coffey offers no evidence that the city council knew of Sullivan's improper motivation or relied on it in deciding to terminate Coffey. Coffey implies that Sullivan was the actual decisionmaker and that the city

15

council accepted his recommendation without giving consideration to Coffey's arguments. But according to the City's written policy, it did not delegate its authority to terminate employees. *See Monell*, 436 U.S. at 691. The Supreme Court has rejected imposing *de facto* authority on officials, especially where a written ordinance provides the contrary. *Praprotnik*, 485 U.S. at 131. In order to hold a city liable where it did not delegate its authority, "(1) a policy, practice, or custom must be attributable to the City through actual or constructive knowledge; and (2) the policy, practice, or custom must directly cause constitutional injury." *Gatlin ex rel. Gatlin v. Green*, 362 F.3d 1089, 1094 (8th Cir. 2004) (citing *Monell*, 436 U.S. at 694). "Imputation of constructive knowledge requires a showing that the underlying unconstitutional misconduct was 'so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of [it].'" *Thelma D. v. Bd. of Educ. of St. Louis*, 934 F.2d 929, 933 (8th Cir. 1991) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987)). Coffey has not offered sufficient proof that Sullivan's retaliatory adverse employment actions constitute a custom of which the City had actual or constructive knowledge such that liability under 42 U.S.C. § 1983 would attach. Thus, the Court grants Defendants' motion for summary judgment on Coffey's claim against the City.

**C.    Minnesota Whistleblower Act**

The Court exercises supplemental jurisdiction over Coffey's two state law claims. The first is a claim under the Minnesota Whistleblower Act which states in relevant part:

> An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because . . . the employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official

Minnesota Whistleblower Act, Minn. Stat. § 181.932 subd. 1 (2010). When alleging a claim under the Minnesota Whistleblower Act, "[t]he employee has the burden to establish a prima facie case; the employer must present a legitimate reason for its action; and the factfinder must decide whether the employer's reasons are pretextual." *Calvit v. Minneapolis Pub. Sch.*, 122 F.3d 1112, 1118 (8th Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish a prima facie case, the employee must show: (1) he engaged in statutorily-protected conduct; (2) the employer took an adverse employment action; and (3) a causal connection between the two. *Id.* Although there is overlap between Coffey's First Amendment retaliation claim and his claim under the Minnesota Whistleblower Act, the latter requires that the employee report a violation or suspected violation of the law—not just speak on a matter of public concern—in order to prove that he engaged in protected conduct. *See* Minn. Stat. § 181.932 subd. 1. Coffey need not identify the precise law that was violated, but the reported conduct "must at least implicate a federal or state law." *Kratzer v. Welsh Cos., LLC*, 771 N.W.2d 14, 19 (Minn. 2009).

Coffey argues that the report he, along with other officers, made to Sullivan about Kettler's sexually inappropriate comments qualifies him for protection under the Act. Defendants respond that Coffey was just one participant in a group discussion. In order for a plaintiff to be considered a "whistleblower," he or she must initiate the report of harassment and not merely provide information to corroborate the complaints of others (this does not mean that the plaintiff had to be the direct target of the harassment). *See Coursolle v. EMC Ins. Grp., Inc.*, 794 N.W.2d 652, 658 (Minn. Ct. App. 2011) (finding participation in an investigation of another employee's complaint did not make the plaintiff a whistleblower himself). Coffey claims he initiated the discussion of Kettler's behavior, but acknowledges that other officers provided the details of the

17

inappropriate comments. Defendants also argue that the facts the officers reported to Sullivan were insufficient to constitute a violation of Minnesota law. Four comments by Kettler, they argue, would not constitute behavior so pervasive as to "substantially interfere with the plaintiff's employment or to create a hostile, intimidating, or offensive work environment." *Cummings v. Koehnen*, 568 N.W.2d 418, 424 (Minn. 1997). Coffey does not allege that Kettler's comments interfered with his employment or created a hostile, intimidating, or offensive work environment. Coffey's limited role in bringing up the topic of sexual harassment does not amount to statutorily protected conduct under the Act.

Even if Coffey established that he engaged in statutorily protected conduct, his claim under the Act suffers from the same failures on the causation element as his First Amendment claim based on the reports of sexual harassment. Coffey's attempt to link his reports of sexually inappropriate comments to his ultimate termination fails to explain his own intervening actions in the stolen license plate case. Because the record does not contain sufficient facts for a jury to find that Coffey reported conduct that violated the law and that his termination resulted from that report, the Court dismisses Coffey's claim under the Act.

**D.    Tortious Interference with Prospective Economic Relations**

To prove tortious interference under Minnesota law, Coffey must show (1) the existence of a reasonable expectation of economic advantage belonging to the plaintiff; (2) the defendant's knowledge of that expectation; (3) the defendant's wrongful interference with that expectation; (4) a reasonable probability that the plaintiff would have realized the expectation absent the defendant's conduct; and (5) damages. *Daum v. Planit Solutions, Inc.*, 619 F. Supp. 2d 652, 658 (D. Minn. 2009).

Defendants argue that Coffey cannot meet the elements of the claim because he fails to assert damages. Coffey acknowledges that he received full back pay and benefits when he was reinstated. But he argues that he endured hardship during the approximately seven months that he was unemployed and suffered reputational harm. He claims he should receive compensation for the severe emotional distress that resulted from the termination. Although damages for emotional distress are available under Minnesota law for interference with a contract, Coffey does not offer any evidence of emotional distress. In the context of tortious interference claims, courts have required more than a plaintiff's testimony of distress to satisfy the damage element. *See e.g.*, *Deli v. Univ. of Minn.*, 578 N.W.2d 779, 783-84 (Minn. Ct. App. 1998) (holding a logical inference from the facts and lay testimony of mental anguish insufficient to prove emotional distress); *Potthoff v. Jefferson Lines, Inc.*, 363 N.W.2d 771, 777 (Minn. Ct. App. 1985) (finding the trial court erred in submitting the issue of emotional distress damages to the jury where there was no evidence that the plaintiff saw a psychologist or physician for treatment of emotional problems). The record is devoid of any evidence of damages, and therefore the Court grants Defendants' motion for summary judgment on the tortious interference claim.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment [Docket No. 32] is GRANTED in part and DENIED in part as to Defendant William Sullivan on Count I of Plaintiff's Amended Complaint [Docket No. 27].

2. Defendants' Motion for Summary Judgment [Docket No. 32] is GRANTED as to Defendant City of Oakdale on Count I of Plaintiff's Amended Complaint [Docket No. 27].

3.  Defendants' Motion for Summary Judgment [Docket No. 32] is GRANTED as to both Defendants on Counts II and IV of Plaintiff's Amended Complaint [Docket No. 27].

Dated:  March 7, 2012

s/ Joan N. Ericksen<br>
JOAN N. ERICKSEN<br>
United States District Judge